# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| CHRISTOHER ALLEN WOODS, ) <br>     Plaintiff ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br>   Acting Commissioner of ) <br>   Social Security, ) <br>     Defendant ) | Civil Action No. 1:14cv00067 <br><br> **MEMORANDUM OPINION** <br><br> BY: PAMELA MEADE SARGENT <br> United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Christopher Allen Woods, ("Woods"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

-1-

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Woods protectively filed an application for DIB on July 15, 2011, alleging disability as of May 23, 2011, due to a stomach ulcer, agoraphobia, anxiety, depression and chronic pain. (Record, ("R."), at 173-75, 187, 193.) The claim was denied initially and on reconsideration. (R. at 80-82, 86-88, 91-94, 96-98.) Woods then requested a hearing before an administrative law judge, ("ALJ"). (R. at 99.) A hearing was held by video conferencing on April 30, 2013, at which Woods was represented by counsel. (R. at 30-54.)

By decision dated May 17, 2013, the ALJ denied Woods's claim. (R. at 14-24.) The ALJ found that Woods met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2015.[1] (R. at 16.) The ALJ also found that Woods had not engaged in substantial gainful activity since May 23, 2011, his alleged onset date. (R. at 16.) The ALJ found that the medical evidence established that Woods suffered from severe impairments, namely fibromyalgia; myalgias with chronic pain; gastroesophageal reflux disease,

---

[1] Therefore, the relevant time period for determining disability is between May 23, 2011, the alleged onset date, and December 31, 2015, the date last insured.

-2-

("GERD"); prostatitis; benign prostatic hyperplasia, ("BPH");[2] neurotic depression; and generalized anxiety disorder, but he found that Woods did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ found that Woods had the residual functional capacity to perform low-stress light work,[3] which did not require more than occasional decision-making, changes in the work setting and interaction with the public or with co-workers. (R. at 18.) The ALJ found that Woods was unable to perform any of his past relevant work. (R. at 23.) Based on Woods's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Woods could perform, including jobs as a night cleaner, an assembler and a packaging line worker. (R. at 23-24.) Thus, the ALJ found that Woods was not under a disability as defined by the Act and was not eligible for DIB benefits through the date of the decision. (R. at 24.) *See* 20 C.F.R. § 404.1520(g) (2015).

After the ALJ issued his decision, Woods pursued his administrative appeals, (R. at 7-8, 10), but the Appeals Council denied his request for review. (R. at 1-5.) Woods then filed this action seeking review of the ALJ's unfavorable

---

[2] BPH is a noncancerous enlarged prostate gland that can be a nuisance, but it is usually not a serious problem. *See* WebMD, http://www.webmd.com/men/prostate-enlargement-bph/benign-prostatic-hyperplasia-bph-topic-overview (last visited January 15, 2016).

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2015). The case is before this court on the Commissioner's motion for summary judgment[4] filed April 3, 2015.

## *II. Facts*

Woods was born in 1963, (R. at 173), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. § 404.1563(c). He has a tenth-grade education and vocational training in welding. (R. at 34, 188.) Woods has past relevant work experience as a welder/fabricator. (R. at 34-35, 188.)

Ashley Wells, a vocational expert, also was present and testified at Woods's hearing. (R. at 45-52.) Wells characterized Woods's past work as a welder as medium[5] and skilled, but it would be considered light work according to Woods's description of his job performance. (R. at 46.) Wells was asked to consider a hypothetical individual of Woods's age, education and past work experience who could perform light work. (R. at 47-48.) She testified that such an individual could perform Woods's past work as a welder, as he performed it. (R. at 48.) Wells was next asked to consider a hypothetical individual who could perform light work that

---

[4] Woods did not file a motion for summary judgment in this matter. Instead, he was granted leave to file a reply brief, which he filed on April 27, 2015.

[5] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2015).

-4-

required no more than occasional decision-making, changes in the work setting and interaction with the public or co-workers. (R. at 48.) She testified that such an individual could not perform Woods's past work, but could perform the jobs of an assembler, a night cleaner and a hand packager. (R. at 48-49.) Wells was asked to consider the same hypothetical individual who could occasionally lift objects weighing 20 pounds and frequently lift objects weighing 10 pounds; who could stand and/or walk two hours and sit for up to six hours out of an eight-hour workday; who could occasionally climb ladders, ropes and scaffolds; who could frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl and reach over his head with his right upper extremity; who was limited to occasional decision-making, changes in the work setting and interaction with the public or co-workers; and who would be absent from the workplace not more than one day a month. (R. at 50.) Wells testified that there was a significant number of sedentary[6] jobs that such an individual could perform, including jobs as a tester, inspector, sorter, a packaging operator, a production worker and a final assembler. (R. at 50.) Lastly, Wells was asked to consider a hypothetical individual who could perform simple, routine, repetitive sedentary work in an environment free of fast-paced production requirements, that involved only simple work-related decisions and few, if any, workplace changes, that required no more than occasional climbing of

---

[6] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2015).

ramps or stairs, balancing, kneeling, crouching, reaching overhead with his right upper extremity, interaction with others, the public or co-workers; who could never crawl or climb ladders, ropes or scaffolds and stoop; who must avoid concentrated exposure to cold and heat, wetness and humidity, vibration, irritants, chemicals, moving machinery and heights; and who would be absent from work at least two days per month. (R. at 51.) She testified that there would be no jobs available that such an individual could perform. (R. at 51.)

In rendering his decision, the ALJ reviewed medical records from Dr. Andrew Bockner, M.D., a state agency physician; Dr. Brian Strain, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dr. Bert Spetzler, M.D., a state agency physician; Dr. W. Eric Shrader, M.D.; Dr. Gary Craft, M.D.; and Dr. Nasreen R. Dar, M.D., a psychiatrist.

On September 13, 2010, Woods saw Dr. W. Eric Shrader, M.D., for complaints of prostatitis. (R. at 252.) He reported that medication improved his depression. (R. at 252.) Woods also reported that his malaise and fatigue had improved and that his GERD was controlled. (R. at 252.) Dr. Shrader noted that Woods was sitting comfortably and looked well. (R. at 252.) On October 4, 2010, Woods complained of low back pain, primarily on the left with some muscle spasm. (R. at 252.) He noted that the pain did not radiate into Woods's legs. (R. at 252.) He noted some slight tenderness around the paraspinal muscles. (R. at 252.) Straight leg raise testing was normal. (R. at 252.) Again, Dr. Shrader noted that Woods was sitting comfortably and looked well. (R. at 252.) Dr. Shrader reported

-6-

that Woods's depression was stable. (R. at 252.) Woods was diagnosed with back strain; prostatitis, resolved; and depression. (R. at 252.) On February 15, 2011, Woods complained of frequency, urgency, dysuria and mild back pain. (R. at 251.) He reported that his symptoms of GERD were controlled and that his depression was better. (R. at 251.) He was diagnosed with prostatitis, urinary tract infection, back pain and depression, which was improved. (R. at 251.) Dr. Shrader recommended that Woods use ibuprofen for his back pain. (R. at 251.) On May 2, 2011, Woods complained of left flank pain. (R. at 251.) He believed that he was passing a kidney stone. (R. at 251.) Woods reported that he was still using ibuprofen for his back pain. (R. at 251.) Dr. Shrader noted that Woods was sitting comfortably. (R. at 251.) On May 18, 2011, Woods reported that his prostatitis had improved. (R. at 250.) Dr. Shrader noted that Woods "still has some back pain" and was requesting a refill of Ultracet. (R. at 250.) He also noted that Woods was "sitting comfortably." (R. at 250.)

On June 17, 2011, Woods came in to get Dr. Shrader to fill out paperwork related to his disability claim. (R. at 250.) Woods reported that he could no longer work because of back pain, joint pains, myalgias, anxiety and depression. (R. at 250.) Woods stated that he avoided people as a result of his anxiety. (R. at 250.) Dr. Shrader reported that Woods was sitting comfortably, but he was very anxious and tremulous. (R. at 250.) He diagnosed anxiety, depression, fibromyalgia, GERD and BPH. (R. at 250.) Dr. Shrader notes no objective findings to support any of Woods's diagnoses or symptoms, other than a noticeable tremor. It is important to note that Dr. Shrader stated, "I completed all his paperwork….We went over each

-7-

question and tried to answer it as truthfully as possible by asking him his symptoms." (R. at 250.)

On January 11, 2012, Woods complained of severe problems with fear of people, anxiety and depression. (R. at 275.) He reported that his GERD was controlled and that his back pain was stable. (R. at 275.) Dr. Shrader reported that Woods was sitting comfortably, but was very anxious and tremulous. (R. at 275.) Woods had a resting tremor. (R. at 275.) Dr. Shrader diagnosed severe anxiety with agoraphobia and depression, fibromyalgia, GERD and BPH, stable. (R. at 275.) On February 16, 2012, Woods complained of severe anxiety with agoraphobia and depression. (R. at 275.) On May 16, 2012, Woods reported that his symptoms of anxiety and depression were stable. (R. at 276.) On July 6, 2012, Woods reported that his symptoms of depression, anxiety and fibromyalgia were doing fairly well with medication. (R. at 276.) He also reported that his back pain had improved. (R. at 276.)

On August 23, 2012, Dr. Shrader completed a physical assessment, indicating that Woods could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 269-70.) He opined that Woods could stand and/or walk, with normal breaks, less than two hours in an eight-hour workday and that he could stand up to 15 minutes without interruption. (R. at 269.) Dr. Shrader opined that Woods could sit a total of two hours in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 269.) He also found that Woods would need to walk

-8-

around every 20 minutes to relieve discomfort and that he would need to do so for up to 10 minutes at a time. (R. at 269.) Dr. Shrader opined that Woods would require the opportunity to shift positions at will and that he would need to lie down at unpredictable intervals, up to two times during a workday. (R. at 269.) He opined that Woods could occasionally crouch and climb stairs and never twist, stoop or climb ladders. (R. at 270.) He opined that Woods's abilities to reach, including overhead, and to push and pull were limited. (R. at 270.) He found that Woods should avoid concentrated exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners and chemicals. (R. at 270.) He also opined that Woods would miss more than four days of work per month. (R. at 270.) Dr. Shrader listed no diagnoses or objective findings to support any of these limitations. Instead, the only medical findings listed were back pain, shoulder pain and knee pain. (R. at 269.) Dr. Shrader's office notes, however, make no mention of Woods ever complaining of shoulder or knee pain.

That same day, Dr. Shrader completed a Depression & Anxiety Questionnaire, indicating that Woods experienced depressive syndrome with anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and thoughts of suicide. (R. at 271-74.) Dr. Shrader also noted that Woods suffered recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom, occurring, on the average of, at least once a week.

(R. at 272.) He also found that Woods experienced recurrent obsessions or compulsions which were a source of marked distress. (R. at 272.) Dr. Shrader opined that Woods had extreme limitations in his ability to perform activities of daily living and marked limitations in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 273.) He found that Woods experienced episodes of deterioration or decompensation in work or work-like settings at the marked level. (R. at 273.) Dr. Shrader's reports of his treatment of Woods, however, mention none of these symptoms other than depression and anxiety with a tremor.

On March 1, 2013, Dr. Shrader completed a Lumbar Spine Medical Source Statement indicating that Woods was diagnosed with severe lumbosacral back pain, fibromyalgia, anxiety and depression. (R. at 286-90.) He indicated that Woods's impairments lasted, or was expected to last, at least 12 months. (R. at 286.) According to Dr. Shrader, the only clinical findings, laboratory or test results that showed Woods's medical impairments were "tenderness" in his back, neck and shoulders. (R. at 286.) Dr. Shrader noted that Woods suffered from low back pain that radiated into his buttocks and neck pain of a seven to eight on a 10-point scale. (R. at 286.) Nonetheless, Dr. Shrader noted that Woods had no positive objective signs and no reduced range of motion. (R. at 286.) Examination showed sensory loss, tenderness in the low back and muscle spasm. (R. at 287.) Dr. Shrader noted that Woods's symptoms of anxiety and depression contributed to the severity of his functional limitations. (R. at 287.) He opined that Woods could walk two city blocks without interruption. (R. at 287.) Dr. Shrader opined that

-10-

Woods could sit and/or stand for less than two hours in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 287-88.) He found that Woods would require a job that would allow him to shift positions at will. (R. at 288.) He found that Woods would need to walk every 15 minutes for up to five minutes at a time and that he would need to take unscheduled breaks during the workday. (R. at 288.) Dr. Shrader opined that Woods could occasionally lift and carry items weighing up to 10 pounds and never twist, stoop, crouch or climb ladders or stairs. (R. at 289.) He found that Woods would be off task 10 percent of the workday due to his impairments. (R. at 289.) He noted that Woods was incapable of even "low stress" work and that he would be absent from work more than four days a month. (R. at 289-90.)

On September 1, 2011, Dr. Gary Craft, M.D., examined Woods at the request of Disability Determination Services. (R. at 261-65.) Dr. Craft reported that Woods was fully ambulatory, free of any acute distress and was not using an assistive device. (R. at 262.) Examination of Woods's neck showed a 10-degree loss of range of motion in all directions. (R. at 262.) His upper extremities revealed a full range of motion of all joints without deformity, heat, redness or swelling. (R. at 262.) Fine and gross manipulation were intact. (R. at 262.) Woods had excellent motor power and grip strength in each arm and was free of any joint abnormalities. (R. at 262-63.) Examination of Woods's back did not reveal any deformities, muscle spasms or abnormal curvature. (R. at 263.) All joints of each lower extremity had a full range of motion and were free of any deformity, heat, redness and swelling. (R. at 263.) Straight leg raising test was negative at 90 degrees

-11-

bilaterally. (R. at 263.) Woods was well-oriented, related well to other people, and his gross mental status was intact. (R. at 264.) He had a normal affect, memory, thought content and general fund of knowledge. (R. at 264.) Dr. Craft opined that Woods could occasionally lift and carry items weighing 20 pounds and frequently lift and carry items weighing 10 pounds. (R. at 264.) He found that Woods's abilities to sit, stand and walk were unaffected. (R. at 264.) Dr. Craft opined that Woods would have minimal manipulative and postural limitations, and he had no environmental or workplace limitations. (R. at 264.)

On September 15, 2011, Dr. Brian Strain, M.D., a state agency physician, opined that Woods had the residual functional capacity to perform medium work. (R. at 60-61.) He found that Woods had no postural, manipulative, visual, communicative or environmental limitations. (R. at 60-61.)

On September 19, 2011, Dr. Andrew Bockner, M.D., a state agency physician, competed a Psychiatric Review Technique form, ("PRTF"), indicating that Woods suffered from an affective disorder and an anxiety-related disorder. (R. at 58-59.) He found that Woods had no limitations on his ability to perform his activities of daily living. (R. at 58.) Dr. Bockner reported that Woods had mild difficulties in his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 58.) He opined that Woods had not experienced any repeated episodes of decompensation of extended duration. (R. at 58.)

-12-

On February 10, 2012, Julie Jennings, Ph.D., a state agency psychologist, completed a PRTF, indicating that Woods suffered from an affective disorder and an anxiety-related disorder. (R. at 68-69.) She found that Woods had no limitations on his ability to perform his activities of daily living. (R. at 68.) Jennings reported that Woods had mild difficulties in his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 68.) She opined that Woods had not experienced any repeated episodes of decompensation of extended duration. (R. at 69.)

On February 14, 2012, Dr. Bert Spetzler, M.D., a state agency physician, opined that Woods had the residual functional capacity to perform medium work. (R. at 70-71.) He found that Woods had no postural, manipulative, visual, communicative or environmental limitations. (R. at 71.)

On February 17, 2012, Dr. Nasreen R. Dar, M.D., a psychiatrist, saw Woods for his complaints of nervousness, difficulty concentrating and difficulty dealing with stress. (R. at 282-84.) He had depressed and anxious mood with an anxious affect. (R. at 283.) Woods's thought content was goal-directed, and he denied suicidal or homicidal ideation. (R. at 283.) Dr. Dar diagnosed generalized anxiety disorder and dysthymic disorder. (R. at 284.) Woods's then-current Global Assessment of Functioning, ("GAF"),[7] score was assessed at 50.[8] (R. at 284.) On

---

[7] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

-13-

March 16, 2012, Woods told Dr. Dar that he felt hopeless, helpless and worthless, but he did not have any suicidal thoughts. (R. at 279.) He said he had been nervous and depressed for "quite some time." (R. at 279.) She stated that Woods appeared to intellectually function in the low borderline range and that his concentration was impaired. (R. at 280.) Dr. Dar reported that Woods's affect and mood were anxious. (R. at 280.) Woods's recent and remote memory was fair, and his impersonal judgment was intact. (R. at 280.) Dr. Dar diagnosed generalized anxiety disorder, chronic and severe, and moderately severe neurotic depression. (R. at 280.) Dr. Dar opined that Woods was not able to tolerate much stress or handle any gainful employment. (R. at 281.) On April 13, 2012, Woods stated that he was still nervous and had difficulty dealing with stress. (R. at 285.) On May 11, 2012, Woods reported that he was "[d]oing fair emotionally." (R. at 285.) It appears that Woods did not keep his June 22, 2012, appointment with Dr. Dar and did not return to see her. (R. at 285.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2014); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a

---

[8] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his

-15-

findings.

Woods argues that the ALJ failed to give greater weight to the opinions of his treating physician, Dr. Shrader, and his treating psychiatrist, Dr. Dar. (Plaintiff's Social Security Reply Brief, ("Plaintiff's Brief"), at 4-7.) I find that the ALJ did not err by failing to give full consideration to Dr. Shrader and Dr. Dar's opinions. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof in disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(c)(2) (2015).

The ALJ noted that he was not giving Dr. Shraders's opinions significant weight because they were not supported by his treatment notes, Woods's reported activities of daily living and the substantial evidence of record. (R. at 21.) The ALJ also noted that Woods's treatment history with Dr. Dar was "quite brief" as Woods saw Dr. Dar twice following his initial evaluation. (R. at 22.) The ALJ also noted that Dr. Dar's opinion was not supported by the substantial evidence of record. (R. at 22.)

The ALJ noted that Dr. Shrader's opinions deserved little weight because they conflicted with the other evidence of record, including his own office notes. (R. at 21.) I agree. A review of Dr. Shrader's records indicate that Woods's

-16-

malaise and fatigue, GERD and depression had improved with medication and that his back pain was stable. (R. at 251-52, 275-76.) On July 6, 2012, Woods reported that his symptoms of depression, anxiety and fibromyalgia were "doing fairly well" with medication. (R. at 276.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Shrader routinely observed that Woods sat comfortably and/or looked well. (R. at 250-52, 275-77.) Furthermore, on August 23, 2012, Dr. Shrader noted that he completed disability papers and went over each question carefully with Woods. (R. at 277.) As the Fourth Circuit noted in *Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996), a doctor's notation of a claimant's subjective complaints does not transform them into clinical evidence. Thus, by Dr. Shrader's own admission, his August 23, 2012, opinion was based on Woods's subjective complaints, not the objective medical evidence. Therefore, the ALJ appropriately assigned it little weight. *See Craig*, 76 F.3d at 589-90 (upholding the rejection of a treating physician's opinion where the ALJ determined that the physician's opinion was based on the claimant's subjective complaints, was not supported by the objective medical evidence, and was contradicted by the physician's office notes).

The ALJ also found that Dr. Dar's opinion was not consistent with the evidence of record. (R. at 22.) As noted by the ALJ, Woods saw Dr. Dar on only two occasions after her March 16, 2012, opinion that he was not able to handle gainful employment. (R. at 285.) The ALJ noted that Woods failed to keep or cancel his June 2012 appointment, which suggested that his "symptoms may not have been as serious as ha[d] been alleged." (R. at 20, 285.) As noted by the ALJ,

-17-

although Woods testified that he stopped seeing Dr. Dar because of lack of finances, he continued to "afford the cost of cigarettes." (R. at 20, 43-45.) Furthermore, at Dr. Dar's last examination of Woods on May 11, 2012, she found him to be neatly and casually dressed, able to relate and "[d]oing fair emotionally." (R. at 22, 285.)

The ALJ gave significant weight to the opinion of Dr. Craft because it was consistent with the substantial evidence of record. (R. at 22.) Dr. Craft found that Woods's upper extremities revealed a full range of motion of all joints without deformity, heat, redness or swelling. (R. at 262.) Fine and gross manipulation were intact. (R. at 262.) Woods had excellent motor power and grip strength in each arm and was free of any joint abnormalities. (R. at 262-63.) Examination of Woods's back did not reveal any deformities, muscle spasms or abnormal curvature. (R. at 263.) All joints of each lower extremity had a full range of motion and were free of any deformity, heat, redness and swelling. (R. at 263.) Woods was well-oriented, related well to other people, and his gross mental status was intact. (R. at 264.) He had a normal affect, memory, thought content and general fund of knowledge. (R. at 264.) Dr. Craft opined that Woods could occasionally lift and carry items weighing 20 pounds and frequently lift and carry items weighing 10 pounds. (R. at 264.) He found that Woods's abilities to sit, stand and walk were unaffected. (R. at 264.) Dr. Craft opined that Woods would have minimal manipulative and postural limitations, and he had no environmental or workplace limitations. (R. at 264.)

For all of the reasons stated herein, I find that substantial evidence supports

the ALJ's weighing of the medical evidence. I also find that substantial evidence exists to support the ALJ's finding as to Woods's residual functional capacity and his finding that Woods was not disabled. Woods's request for oral argument is denied based on my finding that the briefs having adequately addressed the issues. An appropriate order and judgment will be entered.

ENTERED: January 19, 2016.

s/ *Pamela Meade Sargent*<br>UNITED STATES MAGISTRATE JUDGE